IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARIE T. SELVATO,**<br>         **Plaintiff,**<br><br>         v.<br><br>**SEPTA,**<br>         **Defendant.** | **CIVIL ACTION**<br><br>**NO.  14-4919** |

## OPINION

Plaintiff Marie Selvato brings this action against her former employer, Southeastern Pennsylvania Transportation Authority ("SEPTA"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"). Selvato claims that she was subjected to a hostile work environment and discriminated against on the basis of her gender. Before the Court is SEPTA's Motion for Summary Judgment. SEPTA seeks judgment in its favor on all of Selvato's claims against it on the ground that there exist no issues of genuine material fact. For the reasons set forth herein, SEPTA's motion for summary judgment is granted in its entirety.

I.   BACKGROUND

   A. Selvato's Employment 2004 – 2009

Marie Selvato began working as a bus operator for SEPTA on September 26, 1994. Joint Appendix ("JA") 7; Defendant's Statement of Uncontested Material Facts[1] ("Def. Facts") ¶ 1. In or around 1999, Selvato was promoted to Transportation Manager in the Operations/Surface Division, a position which she held until her termination in 2013. JA 7, 84; Def. Facts ¶¶ 2-3.

---

[1] If a party "fails to properly address another party's assertion of fact," the court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e).

From 2004-2006, Selvato acted as a "backfill chief," during which time she was supervised by SEPTA Senior Director Amato Berardi. JA 14.

Plaintiff describes a deeply troubling work environment extending over many years. Berardi would often meet Selvato at her work vehicle and direct her to drive him to restaurants and to get coffee; he also asked her to have dinner with him. JA 14. During these rides, Berardi would talk about how "his penis was big compared to how his height was" and make sexual jokes. *Id.* Co-workers put stickers on Selvato's desk accusing her of "doing it" with Berardi and, as a result, she asked Berardi if she could stop driving him around. JA 14-15. In November 2004, Selvato's coworker Michael Howley commented that individuals working for SEPTA could not get promoted "unless your name ended in a vowel" or if he/she made good sauce. JA 13, 15-16, 86. Howley then told Selvato that she had white sauce on her mouth. *Id.* When a coworker stated that Selvato had Alfredo sauce on her mouth, Howley replied, "[s]he has Amato sauce on her mouth," referring to Berardi.[2] JA 15; Def. Facts, ¶ 4; Plaintiff's Statement of Disputed Facts ("Pl. Facts") ¶ 7. Several co-workers also referred to Selvato as "the gash," which Selvato understood to be a slur for female anatomy.[3] JA 23.

In or around February 2008, Selvato was assigned to work on the newly-created "3C Team," which was tasked with collecting video recordings from SEPTA vehicles. JA 7-8. While team members were setting up the new office, co-worker Michael Kirwin made a comment to Selvato implying that she had sex with another employee in order to acquire a phone

---

[2] The parties agree that Howley's statement implied that Selvato had engaged in oral sex with Berardi. Def. Facts ¶ 4; Pl. Facts ¶ 7.

[3] Selvato also sets forth a litany of complaints which do not on their face relate to her discrimination claims. In 2004, Selvato was informed by Chief D'Agostino that she was not permitted to use her mother's bathroom while working, even though a male employee was permitted to use his mother's bathroom. JA 44-45. In or around 2006, Selvato complained that the seat inside of her work vehicle was broken and hurt her back. When she requested a new vehicle, she was denied. Selvato then had to walk for several days until the car was replaced. JA 17-20, 104. Also around 2006, unidentified Assistant Directors would not give Selvato the pin code necessary to use the copy machine, while other employees were given it. JA 47-48.

for the office. JA 37. Also in 2008, Assistant General Manager Michael Liberi asked Selvato and a female co-worker when they lost their virginities, told Selvato she had a "great rack," made a comment that Selvato was "working the street," stated that strings on Selvato's blouse were dangling across her breasts and distracting him because he wanted to touch them, and asked Selvato whether she was going to be at the shore during the time he was on vacation and said, "what can you do for me?" JA 30-32. In September 2008, Selvato was transferred off of the 3C Team. JA 10. Selvato was told by two co-workers that she was removed from the team because she had "burned [her] bridges." JA 10-11.

Despite these events, Plaintiff made no EEO complaint about them until February 17, 2009, when she contacted SEPTA's Director of Equal Employment Opportunity and Affirmative Action ("EEO"), Lorraine McKenzie, detailing the individual harassment from co-workers and supervisors in addition to alleged intimidation, hostile work environment, gender discrimination, and retaliation. JA 52-54. Selvato also completed an interview information form in which she wrote that she wanted to "be treated in a fair and professional manner. And work in an intimidation free environment. With no harassment or retaliation. I don't want to be afraid for my safety or my job. Like I am now."[4] JA 95-98.

B. Selvato's Employment 2010 – 2012

In 2011, after several requests, Selvato was moved back onto the 3C Team. JA 11-12, 92. The inappropriate comments continued. In or around September 2012, the supervisor of the 3C Team, James Stevens, told Selvato that he was "stalking her Facebook pictures" because she had gone to school with his sister. JA 60. And, a couple of months later, in or around November

---

[4] In a separate letter to McKenzie, Selvato also stated that her supervisor, Assistant Director Kevin O'Connell, had reprimanded her for asking a question, that O'Connell had refused to train Selvato (or her female co-worker) to use a snow plow, and that a female co-worker, Betty Ann Norman, was given overtime work even though Selvato was available and had more seniority. JA 99-100. This was also reflected in SEPTA's internal EEO Initial Contact Summary Sheet. JA 102-05.

3

2012, Stevens told Selvato that a flower on her blouse looked soft and he wanted to pet it, but he was afraid that she would slap him. JA 60-61. That same day in November 2012, Selvato complained to EEO officer Nancy Berman about both incidents. *Id.*

### C. Termination

On December 5, 2012, Selvato began to feel severe pain in her neck and back. JA 62-63. As a result, Selvato took an over-the-counter painkiller, made an appointment with her doctor, and notified O'Connell that she would not be at work. *Id.* On December 10, 2012, while she was still on sick leave,[5] Selvato and her boyfriend, Paul Celetti, drove an hour and a half to New York with advance tickets to see a taping of the "Kelly & Mike Show." JA 65-66. Selvato had previously ordered the tickets in November 2012 and was aware that the show was on December 10, 2012. *Id.* On the way, Celetti drove while Selvato sat in the back seat due to her back and neck pain. JA 66. Once they arrived at the studio, Selvato joined the queue to see the taping and sat on a radiator while they waited. JA 67. Selvato then sat for an hour in the audience as the show was taped, walked with her boyfriend to a restaurant a short distance from the studio, and drove home. JA 67-68.

The next day, December 11, Selvato saw her doctor and received a prescription for a muscle relaxer, an anti-inflammatory, and a painkiller, as well as a doctor's note that prohibited her from working until December 15, 2012. JA 64-65, 114, 359. Selvato filled her prescription two days later, on December 13, 2012. JA 64.

On December 11, 2012, Director of Transportation Michael Lyles received a link from employee Warren Hill to a YouTube video clip showing Selvato attending the Kelly & Mike Show. JA 192-93, 196, 358. SEPTA's sick leave and pay policy directs that "sick pay is the

---

[5] Though Selvato also had vacation and personal days available to use, she remained on sick leave for the entirety of December 5-12, 2012. JA 68.

4

continuation or reduction of salary to an employee who is unable to work or perform the functions of his/her position due to injury or illness." Employees are "expected to remain at home, except for medical treatment." Violations of the sick leave policy are grounds for disciplinary action up to and including discharge. JA 115-22.

Selvato returned to work on December 16, 2012. On December 17, 2012, Lyles interviewed Selvato about her trip to New York City, and she admitted that she had gone to the Kelly & Mike show while she was on sick leave. JA 69, 134-36, 202-03. Selvato stated that the sick leave policy was "vague and unclear" because there was no rule saying she could not go to a show. JA 74, 134-36. On December 20, 2012, Selvato was given written notice of the reasons for her imminent discharge. JA 111-13.

SEPTA terminated Selvato's employment on January 9, 2013. JA 134-36.

## II.     LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), is appropriate "where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted). The moving party must persuade the Court that, "even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). To prevail on a motion for summary judgment, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)) (alteration in original).

## III. DISCUSSION

Selvato alleges she was terminated by SEPTA because of her gender and in retaliation for engaging in protected Title VII activities, and that pervasive sexual discrimination created a hostile work environment.[6] Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

### A. Hostile Work Environment

#### 1. *Time Bar*[7]

To bring suit in Pennsylvania under Title VII, a claimant must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). For discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire, this time period begins when the unlawful employment practice occurred. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 113-14 (2002). By contrast, a hostile work environment claim may be premised on instances of harassment that fall outside the limitations period pursuant to the continuing violations doctrine if the plaintiff can "show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Id.* (citing *Morgan*, 536 U.S. at 122; *West v. Phila. Elec. Co.*, 45 F.3d 744,

---

[6] Selvato's claims regarding discrete discriminatory acts, made pursuant to the Pennsylvania Human Relations Act ("PHRA") and Title VII, were previously dismissed.

[7] Selvato objects to SEPTA's argument that many of the discriminatory acts are time-barred from consideration, arguing that the issue was previously decided in this Court's Order on SEPTA's Motion to Dismiss (ECF No. 12). In that Order, the Court denied SEPTA's motion with respect to the Title VII hostile work environment claim specifically because many of the allegations in Selvato's complaint were undated. Based on reasonable inferences and accepting all facts as true, the Court inferred that acts occurred in a pattern sufficient to aggregate the acts into a hostile work environment claim. Order at n.2. Through the discovery process, however, Selvato was able to specify the dates at which events occurred. With this new chronology, SEPTA's motion for summary judgment on this basis is appropriate.

754-55 (3d Cir. 1995) (explaining plaintiff must show that at least one act occurred within the filing period and that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination").  Here, Selvato alleged continuing acts of discrimination from 2004 to December 20, 2012, in both her EEOC charge of discrimination as well as the instant complaint.  JA 88.  The EEOC filing limitations period for earlier events extends back from the date on which Selvato filed her EEOC complaint, which in this case was approximately July 17, 2013.[8]  Therefore, the 300-day limitations period is September 20, 2012 – July 17, 2013.

In order to take advantage of the doctrine, Selvato must demonstrate that the acts of which she complaints represent a continuing violation, constituting "the same unlawful employment practice," *Mandel*, 706. F.3d at 165, and that at least one of them occurred within the limitations period.  Given the cautionary admonition from the Third Circuit that  "[t]he reach of this doctrine is understandably narrow," *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014), the marked three-year gap between the alleged discriminatory acts in 2009 and Stevens' comments (regarding "stalking" Selvato's Facebook photos and wanting to touch her blouse) made in late 2012 cannot be ignored.

SEPTA contends that incidents of discrimination that purportedly occurred prior to September 2012 may not be considered because the continuing violation doctrine is inapplicable and they fall outside the relevant statute of limitations.  Mtn. at 9-10.  Selvato alleges she was subjected to numerous instances of harassment beginning in or around 2004 (a full discussion of which may be found *supra* at I.A.), and which continued unabated for approximately five years.

While it is clear that Selvato was subjected to frequent and often deplorable harassment between 2004 and 2009, she has failed to produce evidence of harassment for the three years

---

[8] Neither party has offered a firm date of when Selvato filed her charge with EEOC; SEPTA assumes Selvato filed her charge on July 17, 2013, two days before SEPTA received a Notice of Charge of Discrimination from EEOC. Mtn. at 9-10; *see* JA 137.  Using this date, the applicable limitations period began on September 20, 2012.

immediately preceding the limitations period. Opp'n at 18. This significant lapse breaks the pattern of harassment necessary to establish a continuing violation. *See e.g.*, *Hamera v. Cnty. of Berks,* 248 Fed. App'x 422, 424 (3d Cir. 2007) (affirming district court's finding that plaintiff failed to pose a genuine issue of material fact under a continuing violation theory where earlier conduct was not actionable due to a four-year break between allegedly discriminatory comments); *Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 715 (3d Cir. 1997) (affirming district court's ruling that a seven-month break between two employment periods precluded plaintiff from claiming a continuing violation, reasoning that the "passage of nearly seven months [was] significant" because the "hiatus provided an opportunity for the lingering effects of the prior incidents to dissipate").

Given the three-year hiatus between discriminatory acts, the overwhelming majority of the harassment Selvato experienced cannot be said to have constituted "a pattern of actions which *continue[d]* into the applicable limitations period." *Mandel*, 706 F.3d at 165 (citing *O'Connor*, 440 F.3d at 127) (emphasis added). Accordingly, in analyzing Selvato's hostile work environment claim, only those acts which occurred from September 20, 2012 – July 17, 2013 will be considered.

### 2. *Prima Facie Case*

Title VII prohibits sexual harassment that is sufficiently severe or pervasive to effectively alter the terms and conditions of employment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). To establish that the employer is liable for a hostile work environment, Selvato must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) she was detrimentally affected by it; (4) a reasonable person of the same sex in that position would have been detrimentally affected; and

(5) there is *respondeat superior* liability. *Andreoli v. Gates,* 482 F.3d 641, 643 (3d Cir. 2007) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001)); *see also Sala v. Hawk*, 481 F.App'x 729, 734-35 (3d Cir. 2012). SEPTA argues that Selvato failed to demonstrate that the discrimination was severe or pervasive. Mtn. at 14. Given that the focus must be only on the events that took place after September 20, 2012, and not on the events that took place from 2004 to 2009, this argument is valid.

In deciding whether harassment was sufficiently severe or pervasive to create a hostile work environment, no single factor is dispositive: the totality of the circumstances are considered. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). Such circumstances to be weighed are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's psychological well-being." *Id.* at 23; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are insufficient to show a hostile work environment) (internal citation omitted). It follows that the purview of Title VII does not extend to all workplace difficulties, even where the conduct at issue may be crass and unwarranted. Similarly, allegations of isolated or single incidents of harassment, unless extremely serious, are insufficient to establish a cognizable hostile work environment claim. *See Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 165-67 (3d Cir. 2013); *Cibula v. Fox*, 570 F.App'x 129, 135-36 (3d Cir. 2014).

Here, the Court again notes the significant three-year gap between the harassment Selvato experienced from 2004 to 2009 and the comments made by Stevens in 2012. *See supra* at III.A.1. Even if the acts outside the limitations period were aggregated, the considerable lapse in harassment is too long a period to constitute a "severe or pervasive" hostile work environment.

*See e.g.*, *Hamera*, 248 F.App'x at 425 (agreeing with the district court that nine comments over sixteen months "did not rise to an actionable level of harassment").

Selvato's claim is not saved by the comments made by Stevens in late 2012. Even assuming Stevens' two non-threatening, non-physical comments were motivated by Selvato's gender, the Court finds that they were not sufficiently severe or pervasive to establish a prima facie hostile work environment. *See Sherrod v. Phila. Gas Works*, 57 F.App'x 68, 76 (3d Cir. 2003) (discrimination not pervasive or severe where the statements to plaintiff were "not physically threatening or humiliating"); *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir. 1990) (two sexually stereotyped discriminatory comments do not constitute continuous, pervasive discrimination); *cf. Cardenas v. Massey*, 269 F.3d 251, 258-59 (3d Cir. 2001) (the continuous use of racial slurs, assignment of impossible tasks, and references to plaintiff as an "affirmative-action hire," together were sufficient to establish severe or pervasive harassment).

Stevens' statement that he was stalking Selvato's Facebook photos because she went to school with his sister is "subject to a non-[sexual] interpretation," and though his comment about Selvato's blouse may have been humiliating to her, neither of Stevens' remarks was "physically threatening. . . ." *Sherrod*, 57 Fed. App'x at 77. Hostile work environment claims "must demonstrate a continuous period of harassment, and two comments do not create [such] an atmosphere." *Drinkwater*, 904 F.2d at 863. Accordingly, Selvato has failed to establish a prima facie case of a hostile work environment.

### B. Gender Discrimination

Selvato further contends that she was discriminated against on the basis of gender because SEPTA officials fired her for feigning illness while on sick leave – a charge she denies – even though male employees were not terminated for the same conduct. Opp'n at 22-23. In Title VII cases, a plaintiff may establish disparate treatment discrimination "either [by] using

10

direct evidence of intent to discriminate or using indirect evidence from which a court could infer intent to discriminate." *Doe*, 427 F.3d at 364. Selvato purports to have adduced both direct and indirect evidence of gender discrimination. SEPTA, in response, offers a non-discriminatory reason for her termination. Mtn. at 23.

Selvato contends that her gender was a motivating factor in the decision to terminate her, and that her claim should be analyzed under the "mixed motives" test set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) (O'Connor, J., concurring). Opp'n at 23. To survive summary judgment, Selvato faces a "high hurdle;" she must demonstrate that the decision-makers "placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998); *see also Price Waterhouse*, 490 U.S. at 277. Here, Selvato's claim skates over the record evidence, alleging only that SEPTA "condoned and acquiesced in [her] sexual harassment," and terminated her employment "based on false allegations." Opp'n at 22. SEPTA, on the contrary, refers to specific portions of the summary judgment record in support of its contention that Selvato's termination was appropriate and not based on illegitimate criterion.

Lyles, the Director of Transportation, was the primary decision-maker in this case, as it was he who discovered that Selvato had been attending a live television show while on paid sick leave, observed the video of her in the audience, interviewed her about the incident, and gave her a written notice of imminent discharge. JA 69, 134-36, 191-93, 196, 202, 358. Selvato's appeal of that decision was denied by John Reynolds, the Senior Director of Transportation and Lyles' supervisor. JA 134-36, 195. There is no record evidence, and no allegation put forth by Selvato, that either Lyles or Reynolds ever engaged in, or condoned, the sexual harassment she experienced. There are no statements or specific acts that could lead a reasonable factfinder to conclude that her gender was a motivating factor in their decision. Accordingly, Selvato has

failed to demonstrate that decision-makers placed substantial negative reliance on an illegitimate criterion in reaching the decision to terminate her.

Selvato also claims that she has presented sufficient indirect evidence to withstand summary judgment under the burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, the burden of proving a prima facie case is "not onerous." *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 986 (1988) (internal citations omitted). To prevail, Selvato must establish a prima facie case of discrimination by demonstrating by a preponderance of the evidence that she: (1) belongs to a protected class; (2) was qualified for the position; (3) was terminated from her position; and (4) the termination occurred under circumstances that raise an inference of unlawful discrimination. *See Jones v. Se. Pa. Trans. Auth.*, 796 F.3d 323 (3d Cir. 2015); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 348 n.1, 352, 356, 357 (3d Cir. 1999). The burden then shifts to SEPTA to provide a legitimate, nondiscriminatory reason for its adverse employment decision. If SEPTA is able to do so, the burden then shifts back to Selvato, who must show that SEPTA's articulated reasons were a pretext for intentional discrimination. SEPTA concedes that Selvato is a member of a protected class, that she was qualified for her position, and that she was terminated from that position. Mtn. at 18. However, SEPTA argues that Selvato has failed to establish that she was discharged under circumstances giving rise to an inference of discrimination. *Id.*

The requirements of the prima facie case are "flexible", *Pivirotto*, 191 F.3d at 357, and an inference of discrimination may be developed "in a number of ways, including, but not limited to, comparator evidence," or evidence of similar gender discrimination towards other employees. *Golod v. Bank of Am. Corp.*, 403 F.App'x 699, 702 n.2 (3d Cir. 2010). As comparator evidence,

Selvato offers male employees Dennis Zappone, Michael Howley, and Paul Dauria,[9] whom she alleges feigned illness while collecting sick pay yet were not terminated as she was. Opp'n at 24.

As to Dauria, Selvato offers (without elaboration) only his time cards from 2010-2012 as well as a "Performance Discussion" document, dated 2002, that admonished Dauria for leaving his work post for forty-five minutes. JA 291-94. While the performance document indicates that Dauria apparently held the same position as Selvato, his misconduct was in an entirely different category than Selvato's; a forty-five minute unauthorized lunch is hardly comparable to an allegation that an employee feigned illness for several days while attending a live television show in a different state.

While Zappone engaged in misconduct similar to Selvato's, by virtue of his position within SEPTA he is not an appropriate comparator. Selvato worked as a Transportation Manager in the Operations/Surface Division. JA 7, 84; Def. Facts ¶¶ 2-3. At the time of his retirement, Zappone was an Assistant Director of Maintenance in the Engineering, Maintenance and Construction Division. JA 138-42. *See Wilcher v. Postmaster General*, 441 F.App'x 879, 882 (3d Cir. 2011) ("comparator employees must be similarly situated in all relevant respects"); *Pivirotto v.*, 191 F.3d at 359 (holding that a male employee, who was in-house counsel to the employer, was not similarly situated to the female plaintiff, who was director of regional sales operations).

Finally, as to Howley, Selvato has produced no evidence that he actually feigned illness, that SEPTA knew or suspected Howley feigned illness, or that any instances of misconduct by Howley were deliberately overlooked by SEPTA officials. Selvato's subjective belief that Howley engaged in similar misconduct cannot support an inference of discrimination. *See Wilson v. Blockbuster, Inc.*, 571 F.Supp. 2d 641, 647 (E.D. Pa. 2008) (citing *Jones v. United Parcel Serv.*,

---

[9] Dauria's last name is spelled variously as "Dauri," "Duaria," and "Duari" in the parties' papers and the record evidence.

214 F.3d 402, 407 (3d Cir. 2000)). Even if Selvato had presented sufficient evidence with regard to Howley, the "differential treatment of 'a single member of the non-protected class is insufficient to give rise to an inference of discrimination.'" *Pivirotto*, 191 F.3d at 359 (citing *Simpson v. Kay Jewelers,* 142 F.3d 639, 646 (3d Cir. 1998)).

While comparator evidence is not necessary to establish a prima facie case, Selvato has failed to provide any other evidence of discriminatory animus. The two remarks made by Stevens in 2012 are insufficient not only because Stevens was not a decision-maker, but also because they were made weeks before her termination and there is no evidence that the decision-makers had any knowledge of Stevens' comments. *See Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision").

A plaintiff is unable to survive summary judgment if the evidence is insufficient to convince a reasonable factfinder to find *all* of the elements of the prima facie case. *See Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001). Selvato has failed to do so here.

**C. Retaliation**

The anti-retaliation provision of Title VII forbids employer actions that discriminate against an employee because she has "'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-60 (2006), quoting 42 U.S.C. § 2000e–3(a). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must establish a prima facie case of retaliation by demonstrating that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *See McDonnell Douglas Corp,* 411 U.S. 792; *Univ. of Texas Sw.*

14

*Med. Ctr. v. Nassar*, ― U.S. ―, 133 S. Ct. 2517, 2528 (2013). The burden of production then shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action. *See Marra v. Phila. Hous. Auth.,* 497 F.3d 286, 300 (3d Cir. 2007). If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that the proffered explanation "was false, and that retaliation was the real reason for the adverse employment action." *Id.* (quoting *Moore,* 461 F.3d at 342).

SEPTA concedes that Selvato engaged in protected activity when she complained to SEPTA's EEO Office in 2009 and 2012, and that her termination on January 9, 2013,[10] constituted an adverse employment action. Mtn. at 26. However, SEPTA argues that Selvato has failed to establish the requisite causal link between the protected activity and the adverse employment action because there is no record evidence that any of the decision-makers were aware of Selvato's complaints to the EEO Office. Mtn. at 27-28.

To succeed on her retaliation claim, Selvato must present evidence such as "a temporal proximity between the protected activity and the adverse action, antagonistic behavior on the part of the employer, inconsistencies in the employer's articulated reasons for taking the adverse action, or any other evidence that supports an inference of retaliatory animus." *Reaves v. Pa. State Police*, 597 F.App'x 92, 97 (3d Cir. 2015). Above all, Selvato must show that retaliation was the "but-for" cause of her termination. *See Nassar*, 133 S.Ct. at 2534.

Selvato made two complaints to SEPTA's EEO office. The first, in 2009, has no plausible relationship to Selvato's termination in 2012. There is no record evidence of antagonistic behavior in the years after the 2009 report, Selvato was later transferred to her desired work assignment after she made the complaint, and temporally, it is three years removed

---

[10] SEPTA identifies the date as January 9, 2012 at several points throughout their brief, in what appears to be a typographical error.

15

from the adverse employment action. Thus, the timing of events is not "unusually suggestive of retaliatory motive." *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

The second complaint to the EEO office was made in November 2012, to Berman, after Stevens made the Facebook photos and blouse-petting comments to Selvato. JA 60-61, 176, 221-22. Thereafter, Selvato was issued a notice of imminent discharge in December 2012 and terminated in January 2013. Selvato asserts that she has demonstrated "repeated incidents of being subjected to retaliatory actions, . . evidence of animosity towards her by SEPTA's management officials. . . [and] that the individuals she protested against and rejected their sexual harassment. . . were involved and influenced the disciplinary process." Opp'n at 33. The record evidence does not support this claim.

There is no evidence, and Selvato does not allege, that Lyles held any animus towards her. It was Lyles who learned that Selvato had been attending a live television show while on paid sick leave, observed the video of her in the audience, interviewed her about the incident, and gave her a written notice of imminent discharge. JA 69, 134-36, 191-92, 202. There is no evidence that Berman, who took Selvato's EEO complaint, ever told Lyle of the complaint's existence. Selvato points to a December 11, 2012, email from Berman as proof of Berman's involvement in the alleged retaliation. However, Berman sent the email to a third party who did forward it to Lyles but did not do so until after Lyles had already discovered the Kelly & Mike video, and she made no mention of Selvato's EEO complaint in the email. JA 304.

While it is clear that Selvato had unpleasant interactions with some of her superiors over the years (Liberi, Berardi, *etc.*), none of these individuals have been linked to the alleged retaliatory action. Selvato's only remaining evidence of a causal link, then, is the temporal proximity of her complaint in November 2012 to the adverse action that began in December

16

2012.  Unless the timing is unusually suggestive of a retaliatory animus, "temporal proximity alone will be insufficient to establish the necessary causal connection. . . ."  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).  After all, "[i]t is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case. . . ."  *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997).  Here, the adverse action that began weeks after her complaint to the EEO office is not unusually suggestive of retaliation.  *See e.g.*, *Motto v. Wal-Mart Stores E., LP*, 563 F.App'x 160, 164 (3d Cir. 2014) (eleven day period between protected activity and adverse action not unusually suggestive of retaliation).

Selvato strenuously maintains that she was not feigning illness, and that this represents a genuine dispute as to a material fact.  Opp'n at 36.  Whether or not Selvato was legitimately ill prior to being terminated, her subjective displeasure with the result of SEPTA's investigation is, on its own, insufficient to demonstrate a causal link between her protected activities and the decision to terminate her.  *See Wilson v. Blockbuster, Inc.*, 571 F.Supp. 2d 641, 647 (E.D. Pa. 2008) (citing *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000)).  It is up to Selvato to present a prima facie case.  After all, "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Selvato has failed to adduce sufficient evidence for a reasonable jury to conclude that she suffered an adverse employment action in retaliation for her participation in a protected activity. Accordingly, SEPTA's motion for summary judgment shall be granted.

An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

**_____**
**WENDY BEETLESTONE, J.**